This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio, appeals from the decision of the Summit County Court of Common Pleas. For the reasons that follow, we reverse and remand.
{¶ 2} On November 5, 2001, Andre Reynaldo Tejada was indicted for aggravated possession of drugs, in violation of R.C. 2925.11(A). On January 11, 2002, Mr. Tejada filed a motion to suppress all evidence obtained through the execution of a search warrant. A hearing on the motion was held on January 15, 2002 and, on January 28, 2002, the trial court granted the motion to suppress and dismissed the indictment. This appeal follows.
{¶ 3} The State raises three assignments of error. We will address the first assignment of error following our discussion of the second and third assignments of error.
 Second Assignment of Error {¶ 4} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE IN GRANTING THE DEFENDANT'S MOTION TO SUPPRESS SINCE THE MAGISTRATE HAD PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT."
{¶ 5} In the second assignment of error, the State asserts that the trial court erred in granting the motion to suppress because there was probable cause to issue the search warrant. We agree.
{¶ 6} When assessing the adequacy of an affidavit submitted to support a request for a search warrant, the issuing magistrate or judge must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. George (1989),45 Ohio St.3d 325, paragraph one of the syllabus, quoting Illinois v.Gates (1983), 462 U.S. 213, 238-39, 76 L.Ed.2d 527.
{¶ 7} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a denovo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." George, 45 Ohio St.3d at paragraph two of the syllabus, citing Gates, 462 U.S. at 213.
{¶ 8} "Probable cause means the existence of evidence, less than the evidence that would justify condemnation, such as proof beyond a reasonable doubt or by a preponderance; in other words, probable cause is the existence of circumstances that warrant suspicion." State v. Young,146 Ohio App.3d 245, 2001-Ohio-4284, ¶ 23. Consequently, the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires "only a showing that a probability of criminal activity exists." Id.
{¶ 9} In Gates, 462 U.S. at 233, the United States Supreme Court adopted a totality of the circumstances approach in making the determination as to whether an informant's tip sufficiently supports a probable cause finding. In cases involving anonymous informants, a tip can be sufficient when its key elements are corroborated by police observation or investigation. State v. Ross (Jan. 16, 1998), 6th Dist. L-96-266, citing to Alabama v. White (1990), 496 U.S. 325,110 L.Ed.2d 301. Further, "[h]earsay information may be considered in determining probable cause so long as the affiant presents the magistrate with the affiant's basis of knowledge and some underlying circumstances supporting the affiant's belief that the informant is credible." State v. Sharp
(1996), 109 Ohio App.3d 757, 760.
{¶ 10} In the present case, the State asserts that it was error to grant the motion to suppress because probable cause existed to issue the search warrant. In response, Mr. Tejada argues that there was insufficient indicia for the issuing judge to determine that probable cause existed because the affidavit relied on unknown informants and, further, the affidavit established no connection between any illegal activity and the address searched, namely 505 East Buchtel Avenue, #1 ("Buchtel address").
{¶ 11} Detective Shawn Brown of the Akron Police Department prepared an extensive and detailed affidavit in support of the search warrant in this case. The affidavit states that, in August 2001, police executed a search warrant on Brown Street and interviewed Joseph Glover, the target of the investigation. Mr. Glover informed the police that there were several Dominican males from New York staying at 468 Brown Street and that these individuals were involved in the sale of ecstasy and cocaine. Mr. Glover observed these individuals in possession of automatic weapons within the residence. Thereafter, the police received a phone call from Sergeant Ken Taylor of the Pennsylvania State Police regarding a vehicle stop made in Pennsylvania. Sergeant Taylor informed the Akron Police Department that crack cocaine and $13,000 were found in the vehicle. The three occupants of the vehicle included two people from Akron and one from New York. One of these people was Angel Dague ("Angel") and the other was Mr. Tejada, though he provided police with a different name.
{¶ 12} In October 2001, the police received a call from Walter Houghton of the U.S. Customs office. Mr. Houghton informed the police that he had information that several Dominicans from New York were staying in Akron. One of these individuals was Mr. Tejada, a man with previous convictions for narcotics trafficking who was wanted on burglary charges. Mr. Houghton informed police that Mr. Tejada drove a Ford Explorer and stayed with a female named Carol. Mr. Houghton provided Carol's telephone number. The police determined, through use of the APD Wintegrate system, that the telephone number was registered to a female named Carol who resided at 468 Brown Street.
{¶ 13} The affidavit also stated that, in September 2001, a man was shot in front of 468 Brown Street. The injured man refused to cooperate with the police but, in October 2001, the police received a call from an anonymous source regarding the shooting. The caller referred to Mr. Tejada as "a Dominican named Andre" and stated that Mr. Tejada was responsible for the shooting. The caller informed police that Mr. Tejada lived in Akron with several other Dominicans and that these individuals were selling large quantities of ecstasy. The caller also informed police that the individuals were currently living with a person named Angel, a woman who sold crack cocaine from her home.
{¶ 14} Thereafter, police met with an informant who informed them that Angel was presently living at the Buchtel address. The informant told police that Mr. Tejada was currently at this address too. Further, the informant stated that Mr. Tejada was seen with a loaded pistol in his pocket. The affidavit provided that, based on this information, police conducted surveillance at the Buchtel address. A Dominican male was observed getting into a green Ford Explorer. The vehicle was registered to an individual with a second vehicle registered under his or her name. Police observed this second vehicle at 468 Brown Street.
{¶ 15} Toward the end of October of 2001, an informant called a telephone number and asked to speak with Angel. The person who answered the telephone stated that Angel was currently not home. Later, the informant met with Angel. They discussed the Buchtel address and Angel told the informant that Mr. Tejada was on his way to New York to pick up a shipment of narcotics which he would then transport to Akron.
{¶ 16} On that same day, an anonymous source called police and informed them that she was calling from New York. She informed police that Mr. Tejada had been in New York picking up narcotics to sell in Akron. The caller stated that Mr. Tejada was staying with a female and provided a telephone number. The caller also stated that there was a bullet wound scar on Mr. Tejada's hand and that he drove a green Ford Explorer. An informant later called the telephone number provided and held a conversation with Mr. Tejada. Police conducted additional surveillance of the Buchtel address and observed three males exiting the residence. Police conducted a traffic stop of their vehicle, whereupon the driver informed police that he was from New York and was in town to visit Angel.
{¶ 17} In the affidavit, Detective Brown alleged that cocaine, ecstasy, guns, U.S. currency, as well as records, documents, measuring and processing devices relating to drug trafficking were being possessed at the Buchtel address. Based upon this affidavit, a warrant was issued to search the Buchtel address.
{¶ 18} A careful review of the affidavit reveals that the details of illegal activity were corroborated between each of the sources of information. Every informant provided information that was consistent with the statements of Mr. Glover, Sergeant Taylor and Mr. Houghton and, also, with the surveillance and investigation conducted by the police. Further, each informant provided overlapping information that was corroborated by the other informants' statements. The information in the affidavit also clearly establishes a connection between the illegal activity and the Buchtel address.
{¶ 19} Based upon the totality of the circumstances, we agree with the issuing judge that the Detective Brown provided probable cause for a search of the Buchtel address. The State's second assignment of error is sustained.
 Third Assignment of Error {¶ 20} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DISMISSING THE INDICTMENT SINCE A TRIAL COURT HAS NO POWER TO DISMISS AN INDICTMENT MERELY BECAUSE IT GRANTS A MOTION TO SUPPRESS."
{¶ 21} In the third assignment of error, the State asserts that the trial court erred when it determined that it was proper to dismiss the indictment once it granted Mr. Tajada's motion to suppress. We agree.
{¶ 22} "There is no basis under the Rules of Criminal Procedure for dismissal of an indictment, or any count in an indictment, so long as the indictment makes out an offense under the Ohio criminal law. That some of the State's evidence is subject to suppression does not provide a basis for dismissal. While the State may have a tougher row to hoe without the availability of the suppressed evidence, it does not necessarily follow that, as a matter of law, the defendant is entitled to dismissal of the charge." State v. Couch (June 25, 1999), 2nd Dist. No. 17520.
{¶ 23} A motion to dismiss or other pretrial motion should not entail a determination of the sufficiency of the evidence to support an indictment. State v. Kolat, 11th Dist. No. 2001-L-117, 2002-Ohio-4699, ¶ 16. Prior to trial, the Ohio Rules of Criminal Procedure do not allow for a "summary judgment" on an indictment prior to trial. Akron v.Thomas (Jan. 27, 1999), 9th Dist. No. 19031, quoting Akron v. Waters
(Apr. 23, 1997), 9th Dist. No. 18004.
{¶ 24} In the present case, it was not asserted that the indictment did not make out an offense under Ohio criminal law; rather, upon granting Mr. Tajada's motion to suppress, the trial court determined that it was proper to dismiss the indictment. Therefore, based upon the facts of this case, the indictment is reinstated. The State's third assignment of error is sustained.
 First Assignment of Error {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE IN GRANTING THE MOTION TO SUPPRESS SINCE THE DEFENDANT DID NOT DEMONSTRATE THAT HE HAD STANDING TO OBJECT TO THE SEARCH OF THE APARTMENT."
{¶ 26} The State's second assignment of error is sustained. As a result, this Court declines to address the first assignment of error. See App.R. 12(A)(1)(c).
{¶ 27} The State's second and third assignments of error are sustained. Based upon our decision with regard to the second assignment of error, we decline to address the first assignment of error. The decision of the Summit County Court of Common Pleas is reversed and the cause is remanded.
CARR, P.J. CONCURS IN JUDGMENT ONLY, WHITMORE, J. CONCURS.